# IN THE COURT OF APPEALS OF IOWA

No. 22-0677
Filed December 6, 2023

**BRETT ANDREW GILDEN,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

A postconviction applicant appeals the denial of relief from judgments for willful injury causing serious injury, going armed with intent, and assault while displaying a dangerous weapon. **AFFIRMED.**

Karmen Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., Buller, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

A jury convicted Brett Gilden of willful injury causing bodily injury, going armed with intent, and assault while displaying a dangerous weapon. The district court denied his application for postconviction relief (PCR). On appeal, he contends the PCR court should have found that his trial attorney was ineffective by (1) allowing the jury to hear that he served time in jail and (2) not requesting a jury instruction to clarify when justification was an available defense. He also seeks a retrial based on newly discovered evidence that the stabbing victim partially recanted his trial testimony.

On the ineffective-assistance-of-counsel claims, Gilden falls short in proving prejudice stemming from his trial attorney's inaction. As for his claim of newly discovered evidence, we share the PCR court's view that the recantation was neither credible nor persuasive. Thus, we affirm.

## I.      Facts and Prior Proceedings

"I'm not going to back down from nobody, dude." That's what Gilden told Officer Billy Dieujuste twenty-three hours after Dustin McGonigle was stabbed.

The stabbing occurred outside Jason Woods's duplex in April 2019. In the week just before the confrontation, Gilden had been texting and sending Facebook messages to Woods, who was dating Gilden's ex-girlfriend. Among their hostile exchanges, Gilden threatened to come to Woods's home and "see how tough u are" and "idc where it is I'm beating you do death." True to his word, Gilden showed up at Woods's doorstep just after midnight. But Woods was not home. It was just his son, C.W., and C.W.'s friend, McGonigle. McGonigle answered the door. He didn't know Gilden. Gilden asked for Woods or his girlfriend. Told they were not

there, Gilden left. But not for long. Gilden circled the house and knocked again, this time with more force.

When McGonigle answered for the second time, Gilden taunted him. McGonigle recalled: "[H]e said he was going to beat me like my daddy should have." Soon, the pair started "throwing punches" while moving off the front porch and down the sidewalk. C.W. was standing behind McGonigle as he fought with Gilden. As the skirmish escalated, McGonigle saw Gilden's arm come down and watched a knife "slide out" of his stomach. Realizing he'd been stabbed, McGonigle called to C.W.: "He's got a knife, get back."

According to C.W., Gilden "said a couple words like he was happy or something and then ran off." After Gilden left, C.W. called 9-1-1 and then his father. Hearing about the attack, Woods rushed home to check on his son. Woods told police he believed the attacker was Gilden. Based on that lead, police showed a photo array to McGonigle.[1] McGonigle identified Gilden as the person who stabbed him.

Officer Dieujuste interviewed Gilden at his home just before midnight, the same day as the stabbing. About thirty seconds into the interview, Gilden said he wasn't the type of person to shy away from a fight. Gilden admitted knocking on the door of the duplex and then going to the side of the house to see if Woods was hiding from him. Gilden then blamed Woods for putting his son in danger by not being home. Gilden denied having a knife but referenced "wishing he had a knife"

---

[1] An ambulance took McGonigle to the hospital. He recalled: "They gave me a couple staples, and they just pretty much released me down to the jail because I had an active failure to appear [warrant] they issued out that night."

several times. During the interview, Gilden told the officer that three men "jumped him" in front of Woods's duplex.

Meanwhile, McGonigle was suffering "a significant amount of pain," and after he bonded out, returned to the hospital. Doctors discovered the knife had punctured his colon—requiring surgery.

The State charged Gilden in a three-count trial information with willful injury causing serious injury, a class "C" felony, in violation of Iowa Code section 708.4(1) (2019); going armed with intent, a class "D" felony, in violation of section 708.8; and assault while displaying a dangerous weapon, an aggravated misdemeanor, in violation of section 708.2(3).

In preparation for the October 2019 trial, Gilden's counsel, Daniel Dlouhy, moved in limine to exclude evidence of his client's criminal history. The prosecutor agreed, saying: "I know some of the witnesses want to talk about that, and I will very firmly impress . . . that [restriction] upon them." But despite that agreement, the information slipped out during jury selection. The prosecutor asked a prospective juror if he had any information about the case. The juror responded: "I was in jail with Brett for six months and I was in the halfway house with him." He added that their encounter was "three or four years ago." That juror was excused. But defense counsel took no further action to address the jail reference.

After a four-day trial, the jury returned guilty verdicts on all three counts. The district court sentenced Gilden to terms of ten years, five years, and two years to be served concurrently. He filed a direct appeal in February 2020, challenging the five-year mandatory minimum imposed on the willful injury conviction. We reversed and remanded for resentencing because the sentencing court had been

unaware of its discretion to reduce the mandatory minimum term. *State v. Gilden*, No. 20-0256, 2020 WL 7021789, at *2 (Iowa Ct. App. Nov. 3, 2020). On remand, the district court imposed the same sentence.

While the direct appeal was pending, in May 2020, Gilden applied for PCR. That August, Gilden's counsel deposed McGonigle. Counsel asked: "[I]s there any truth that maybe Mr. Gilden did not stab you?" McGonigle answered: "Could be." Counsel followed up, "[I]s that because everything happened so fast in the fight?" McGonigle again answered: "Could be." When asked how many people were fighting, McGonigle replied: "Approximately three. . . . Three plus Brett." McGonigle also said he was "under the influence" during the incident so he didn't "remember a lot."

In January 2021, the parties agreed to submit the matter on stipulated exhibits, depositions, and trial briefs. Gilden's counsel briefed roughly one dozen claims of ineffective assistance of counsel, plus an allegation of newly discovered evidence. The PCR court rejected the newly-discovered-evidence claim, finding McGonigle's deposition testimony to be incredible. It noted: "There were allegations that the Applicant tried to bribe [McGonigle] with money to change his identification of the assailant." The court also concluded that Gilden failed to prove prejudice stemming from "any action or inaction by his trial counsel."

Gilden appeals the dismissal of his PCR application. He narrows his focus to two claims of ineffective assistance of counsel, plus the allegation of newly discovered evidence.

**II.      Scope and Standards of Review**

We review PCR rulings for the correction of errors at law, unless they involve constitutional claims; then our review is de novo.  *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016).  We review Gilden's claim based on newly discovered evidence for corrections of errors at law.  *See id.*

**III.      Analysis**

**A.  Ineffective Assistance of Counsel**

Gilden first contends attorney Dlouhy should have moved for a mistrial when a potential juror mentioned being in jail with Gilden.  Second, he argues that counsel breached a material duty by not requesting Iowa Criminal Jury Instruction No. 400.15 to clarify the other justification instructions.

To prevail on his claims against his trial counsel, Gilden must show (1) counsel breached an essential duty and (2) prejudice resulted.  *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).  To show prejudice, he must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  His inability to prove either element of ineffective assistance dooms his case.  *See id.*

**1.  Jail Reference**

As his first complaint, Gilden contends that attorney Dlouhy should have moved for a mistrial during jury selection when a prospective juror told the panel that he met Gilden when they were both in jail.  Even if that reference to jail was not alone prejudicial, according to Gilden, it was "not an isolated incident."  Gilden points to testimony from his former girlfriend and a detective who both mentioned

his time in jail. In his deposition testimony, Dlouhy said he wasn't sure if the potential juror's jail reference would have affected the other jurors' views of Gilden. As for the other references to jail during trial, counsel didn't recall why he did not object to that testimony or ask the judge for a limiting instruction.

But the State finds fault in Gilden's analysis:

> The problem with Gilden's prejudice argument is that counsel could not have known during voir dire that other references to the incarceration would be made. Although Gilden urges counsel should have objected to the other references to his jail stay as a violation of the motion in limine, he does not appear to assert that counsel was ineffective for failing to move for a mistrial when these references were made.

The State notes that the PCR court only addressed the juror's comment, and Gilden did not ask for a broader ruling. We agree with the State's assessment. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). Thus, Gilden's claim is limited to his attorney's inaction faced with the juror's jail comment.

And, as the PCR court found, "[t]here was no lingering on the topic." Even if we assume attorney Dlouhy had grounds to move for a mistrial, that alone is not enough to set aside the conviction. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case."). There is no reasonable probability that hearing that Gilden had been in jail three or four years earlier drove the jury's decision. Rather, "the State's case was strong. It established that the victim saw the knife as it exited the wound on his body while he and [Gilden] were in close proximity to one another during the altercation." The State presented a compelling case for convicting

Gilden. Thus, it is not reasonably probable that if counsel had moved for a mistrial, the result of the proceedings would have been different. *Id.*

### 2. Jury Instruction

Gilden next claims attorney Dlouhy should have requested Instruction No. 400.15 from the criminal jury instructions developed by the Iowa State Bar Association.[2] That uniform instruction, based on Iowa Code section 704.6(3), clarifies when a justification defense is available:

> **400.15 Provocation—Withdrawal From Combat**. Concerning element number ___ of Instruction No. _____, though a person who provokes the use of force against [himself] or [herself] is not justified, there is an exception.
>
> If you find the defendant provoked the use of force by (name of victim), but the defendant, in good faith, withdrew from physical contact with (name of victim) and clearly indicated to (name of victim) that [he] [she] desired to end the fight, but (name of victim) continued or resumed the fight, then the defendant was justified.

On appeal, Gilden acknowledges that "[a]t first blush it may appear that [he] put himself in a position to instigate a fight, albeit that it was not intended to be with Dustin McGonigle, which could, depending on the circumstances defeat the self-defense argument, absent some exception." That exception, he contends, comes from section 704.6(3). He points to evidence that he believes shows that he withdrew from physical contact with McGonigle, C.W., and an alleged third party. For example, Gilden notes that the fight moved two houses down from Woods's residence. And he claims to have suffered scrapes to his knees and elbows.

---

[2] The PCR exhibit offered by Gilden showing the uniform instruction at issue notes it was "updated through June 2019." The justification instructions were updated in 2020. The uniform instruction addressing when provocation bars reliance on a justification defense is now included in Instruction 400.4.

To counter, the State highlights C.W.'s testimony that Gilden "kept coming back at us" and only left after he stabbed McGonigle. And McGonigle testified that Gilden never said that he wanted to stop the fight. The PCR court stressed that second point: "There was no intent expressed to cease involvement in the altercation with Dustin. As [Gilden] himself stated, he does not back down."

Considering this record, the PCR court found that any mistake by attorney Dlouhy in not asking for Instruction No. 400.15 did not result in prejudice. We agree. There is no reasonable probability that the outcome of Gilden's trial would have been different if the jury had received that instruction. *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019).

**B. Newly Discovered Evidence**

Gilden's next challenge involves a half-hearted recantation by McGonigle. In August 2020, Gilden's counsel deposed McGonigle while he was in jail. As discussed above, counsel asked: "is there any truth that maybe Mr. Gilden didn't stab you?" And McGonigle cryptically replied: "could be." McGonigle gave the same response when counsel suggested that "everything happened so fast in the fight." McGonigle also suggested that three people, plus Gilden, participated in the fight. Gilden argues these statements constituted newly discovered evidence warranting a new trial.

To prove his claim of newly discovered evidence, Gilden must show (1) the evidence was discovered after the verdict; (2) it could not have been discovered earlier in the exercise of due diligence; (3) it is material to the issues in the case; and (4) it probably would have changed the result of the trial. *See Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018). We also recognize that "a witness'[s]

recantation testimony is looked upon with the utmost suspicion." *Adcock v. State*, 528 N.W.2d 645, 648 (Iowa Ct. App. 1994).

Indeed, the PCR court did not find McGonigle's deposition credible. The court noted that his new uncertainty about who stabbed him contrasted with his positive identification of Gilden at trial. But Gilden questions the PCR court's credibility determination based on a deposition rather than live testimony. And he argues McGonigle's identification of him from a photo array was not reliable.

Like the district court, we find that McGonigle's tepid recantation is not the kind of credible or persuasive evidence that has a reasonable chance of changing the result of the trial. The PCR court had broad discretion to view the entire matter and decide whether Gilden had a fair trial and if a new trial would end with a different outcome. *See id.* We see no reason to interfere with that discretion on this record.

**AFFIRMED.**